Case 1:09-cv-05353-JSR   Document 1   Filed 06/10/2009   Page 1 of 16

JUDGE RAKOFF

09 CIV 5353

DAVID ROSENFELD
Associate Regional Director

New York Regional Office
Attorney for Plaintiff
Securities and Exchange Commission
3 World Financial Center – Suite 400
New York, New York 10281-1022
(212) 336-0153

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,       09-CV-

   - against -

MATTHEW D. WEITZMAN,       COMPLAINT

      Defendant.
------------------------------------------------------------------x

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") for its Complaint against defendant Matthew D. Weitzman ("Weitzman" or "Defendant") alleges as follows:

### SUMMARY

1.  This action concerns the misappropriation of millions of dollars of client assets that had been entrusted to an investment adviser. From at least 2005 until March 2009, Weitzman misappropriated millions of dollars from the clients of AFW Wealth Advisors, the business name for AFW Asset Management, Inc., a registered investment adviser co-founded by Weitzman ("AFW"). He used this client money entrusted to him for investment as his personal piggy-bank to furnish a lavish lifestyle, which included a multi-million dollar home, an interest

in a horse, cars, and other expensive luxury items.

2. Weitzman misappropriated client funds invested through managed accounts held at a registered Broker-Dealer (the "Broker-Dealer"). First, Weitzman initiated unauthorized transfers from the client accounts at the Broker-Dealer to an AFW bank account. He then either withdrew the clients' funds or transferred the funds directly into one of his personal bank accounts. Weitzman actively concealed his fraudulent scheme by forging client signatures on letters purportedly authorizing these transfers and submitting those letters to the Broker-Dealer. In addition, when certain clients questioned Weitzman about the unauthorized transfers from their accounts, Weitzman falsely stated that the funds would be used for legitimate investment purposes when in fact Weitzman was taking the funds for his own personal use.

3. The conduct has been ongoing. As recently as March 24, 2009, Weitzman made an unauthorized transfer of $35,000 from a client's account.

## VIOLATIONS

4. By virtue of the conduct alleged herein:

    a. The Defendant, directly or indirectly, has engaged and is engaging in acts, practices and courses of business that constitute violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 (the "Advisers Act") [15 U.S.C. §§ 80b-6(1) and 80b-6(2)]; and

    b. The Defendant, directly or indirectly, has engaged and is engaging in

acts, practices and courses of business, that constitute aiding and abetting violations of Section 204 of the Advisers Act [15 U.S.C. § 80b-4] and Rules 204-2(a)-3 and 204-2(a)(7) thereunder [17 C.F.R. §§ 275.204-2(a)(3) and 275.204-2(a)(7)].

5. Unless the Defendant is permanently restrained and enjoined, he will again engage in the acts, practices and courses of business set forth in this Complaint and in acts, practices and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

6. The Commission brings this action pursuant to the authority conferred upon it by Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)] and Section 209 of the Advisers Act [15 U.S.C. § 80b-9], seeking to restrain and enjoin permanently the Defendant from engaging in the acts, practices, transactions, and courses of business alleged herein.

7. The Commission also seeks an asset freeze, a verified accounting, an order prohibiting the Defendant from destroying or altering documents, and an order prohibiting Defendant from filing for bankruptcy protection without notifying the Commission and gaining approval of this Court.

8. Finally, the Commission seeks a judgment ordering the Defendant to disgorge ill-gotten gains and pay prejudgment interest thereon, and ordering the Defendant to pay civil money penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to Sections 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(e) and 78aa], and Section 214 of the Advisers Act [15 U.S.C. § 80b-14].

10. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391. The Defendant, directly and indirectly, has made use of the means and instrumentalities of interstate commerce, or of the mails, in connection with the transactions, acts, practices and courses of business alleged herein. A substantial part of the events described herein occurred, and the Defendant resides, in the Southern District of New York. In addition, AFW is located in this district.

## DEFENDANT

11. **Weitzman**, age 43, resides in Armonk, New York. He is a co-founder of AFW Asset Management, Inc., doing business under the name AFW Wealth Advisors, and until March 30, 2009, served as Chief Compliance Officer. He previously held Series 7, 24, 63 and 65 licenses. He is not currently registered with the Commission in any capacity.

## RELATED ENTITY

12. **AFW** is the business name for AFW Asset Management, Inc., an investment adviser registered with the Commission since October 1993. AFW Asset Management, Inc. was incorporated in Delaware in 1993. AFW's principal place of business is located in Purchase, New York, and it has an office in Natick, Massachusetts.

## FACTS

### Weitzman's Misappropriation and Misrepresentations to AFW Clients

13. Weitzman co-founded AFW in 1993. Prior to April 2009, AFW purported to have over 300 clients and approximately $200 million in assets under management.

14. AFW offers advisory services to individuals and charges its clients a management fee. Weitzman received a portion of this management fee. Clients' investments are made in individual securities which are held in managed accounts. The vast majority of these managed accounts are maintained at the Broker-Dealer. In some instances, the Broker-Dealer referred clients to AFW.

15. AFW clients who invested their money in an account with the Broker-Dealer had the option to authorize Weitzman and the other AFW principal to perform certain transactions in the accounts on the clients' behalf via a limited power of attorney. Generally, this power of attorney enabled Weitzman and the other AFW principal to enter trades, and if the client desired, to authorize disbursements and withdrawal of fees from the accounts.

16. Since at least 2005, Weitzman used certain of the AFW client accounts as his personal piggy-bank. On at least 100 occasions, Weitzman made unauthorized transfers ranging from $15,000 to $100,000 from at least 20 clients' accounts, including clients' Individual Retirement Accounts.

17. In order to facilitate and conceal his unauthorized transfers, Weitzman forged letters purportedly authorizing wire transfers from clients' accounts to an AFW bank account (the "AFW account"), which he controlled. Weitzman transmitted his forged authorization letters to the Broker-Dealer. Upon receipt of this purported authorization, the Broker-Dealer

transferred the funds as Weitzman directed, supposedly for the benefit of the AFW client.

18. On at least four occasions in 2007, Weitzman forged checks drawn against funds held in certain AFW client brokerage accounts and deposited the stolen funds into the AFW account.

19. Weitzman either sold securities held in the clients' accounts, or redeemed shares held in money market funds in order to acquire cash for the unauthorized transfers, since the clients' brokerage accounts at the Broker-Dealer generally did not hold more than a minimal amount of cash.

20. Once he had the looted funds under his control in the AFW account, Weitzman either withdrew the clients' funds or transferred the funds directly into one of his personal bank accounts. Weitzman used the money he misappropriated from the clients to furnish his luxurious life-style, which included his multi-million dollar home, an interest in a horse, luxury cars, and other expensive items. From 2005 through March 2009, Weitzman's withdrawals of clients' funds or transfers of funds to his bank accounts totaled in excess of $6 million.

21. In some instances, Weitzman misappropriated funds from AFW clients who were unlikely to be scrutinizing their account statements from the Broker-Dealer. For example, Weitzman misappropriated a total of approximately $430,000 in a series of unauthorized transfers from a client during the last three months of 2008 while that client was terminally ill ("Victim A"). Wetizman forged Victim A's signature and transmitted a letter to the Broker-Dealer purportedly authorizing a transfer of $100,000 from Victim A's account. The letter was dated several days after Victim A's death.

22. After Victim A died, Weitzman misappropriated a total of $85,000 in two

separate unauthorized transfers from the account of Victim A's widow.

23. Weitzman also targeted an elderly couple ("Victim B") with compromised mental capacities. Weitzman misappropriated a total of approximately $400,000 from Victim B.

24. According to Weitzman's elderly father-in-law who was also an AFW client ("Victim C"), in early March 2009, Weitzman admitted to Victim C that beginning in 2002, he misappropriated $3 million from him.

25. Weitzman also defrauded a 24 year old law student ("Victim D") who entrusted Weitzman with investing a $1 million inheritance from her deceased parents. Weitzman misappropriated $100,000 from Victim D. When Victim D asked about the $100,000 wire transfer, Weitzman told her he was simply "moving money around" for routine investment purposes. That statement was false because Weitzman had in fact taken the money for his own use.

26. In some instances, other AFW clients noticed the unauthorized transfers from their accounts and contacted Weitzman for information. For example, in February 2009, one client ("Victim E") emailed Weitzman to ask about a $35,000 wire transfer from his account. Weitzman responded to Victim E's email stating, "[t]hat was an investment that we made. The funds will come back into the account soon." In fact, Weitzman forged Victim E's signature on a letter of authorization to the Broker-Dealer, and never made any investments with those misappropriated funds and never returned the funds to Victim E's account.

27. In at least one other instance in 2008, Weitzman recommended to a client ("Victim F") that she invest in structured notes, which are fixed income debt instruments. Weitzman told Victim F that these investments would be held in an account that was different

from Victim F's account at the Broker-Dealer. Weitzman sold securities held in Victim F's account and used the proceeds, not to purchase structured notes, but rather to make two separate unauthorized transfers of $35,000 and $40,000 to the AFW account.

**Weitzman's Fraud Continued until at least March 2009**

28.  On March 24, 2009, Weitzman submitted a letter of authorization, purportedly signed by an AFW client ("Victim G"), to the Broker-Dealer for a $35,000 transfer from that client's account to the AFW account. Weitzman had forged Victim G's signature on the letter he transmitted to the Broker-Dealer.

29.  Victim G logged onto his account at the Broker-Dealer and noticed the $35,000 transfer. Realizing that he did not authorize the transfer, Victim G contacted the Broker-Dealer. The Broker-Dealer informed Victim G that the withdrawal had been made pursuant to a faxed letter of authorization. Victim G then contacted Weitzman who told Victim G that Weitzman believed he could withdraw money from the account to invest in high yield certificates of deposit. Victim G explained to Weitzman that he had not authorized any such withdrawals. Weitzman then asked Victim G not to contact the Broker-Dealer and assured him that he would investigate.

30.  Nevertheless, Victim G contacted the Broker-Dealer and obtained the purported letter of authorization. Victim G then realized that the signature was a forgery.

31.  When the Broker-Dealer contacted Weitzman about the transfer, Weitzman again claimed falsely that he believed the transfer was authorized, but agreed to reimburse Victim G's account for the $35,000. Despite this, the Broker-Dealer scheduled a telephone call with AFW's other principal for March 30, 2009 to discuss a "signature issue."

32. Prior to the scheduled call on March 30, the other AFW principal confronted Weitzman and asked him what the Broker-Dealer wanted to discuss. Weitzman then admitted to the other AFW principal that over several years he misappropriated client funds from an unspecified number of AFW client accounts held by the Broker-Dealer.

33. On or around March 30, 2009, Weitzman also admitted to Victim C that, in addition to the $3 million that he had he misappropriated from Victim C's accounts, he also misappropriated funds from other AFW clients.

34. The evidence from the Broker-Dealer and AFW clients indicates, however, that Weitzman misappropriated in excess of $6 million from 2005 through March 2009.

**Misleading Account Statements**

35. As part of his fraudulent scheme, Weitzman falsified AFW's books and records in an effort to prevent his victims from realizing that he misappropriated funds from their accounts. The Broker-Dealer sent monthly statements to clients directly. AFW also sent quarterly statements to its clients, purportedly based on the information contained in the Broker-Dealer monthly statements. Weitzman prepared these quarterly statements on behalf of AFW.

36. On at least one occasion in 2007, Weitzman fabricated and misrepresented holdings in a client's account statement ("Victim H") in order to conceal $122,000 of misappropriated funds.

37. The Broker-Dealer issued a statement for the month of December 2007 that showed a balance of $291,197.19 in Victim H's account. Weitzman misappropriated $122,000 from Victim H's account in the months leading up to this statement. He concealed his theft from Victim H, however, by issuing a fabricated quarterly statement from AFW that showed a balance

of $404,806.18, which was $113,608.99 more than the actual balance. The AFW statement inflated the money market fund balance and showed phony securities holdings in an amount that almost equaled the sum Weitzman had stolen.

38. Weitzman also attempted to explain any differences between the respective AFW and Broker-Dealer statements by claiming on the AFW statement that "discrepancies may exist due to circumstances outside AFW [sic] control."

39. In addition, other defrauded clients' quarterly statements from AFW were misleading because, even though the statements included the withdrawal of funds from the Broker-Dealer account, the statements did not disclose that those transfers were unauthorized and that Weitzman was systematically looting the accounts for his own gain.

### FIRST CLAIM FOR RELIEF
### Violations of Section 10(b) of the Exchange Act
### and Rule 10b-5

40. The Commission re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 39.

41. From at least 2005 through the present, the Defendant, in connection with the purchase and sale of securities, directly and indirectly, by the use of the means and instrumentalities of interstate commerce or of the mails, has employed and is employing devices, schemes and artifices to defraud; has made and is making untrue statements of material fact and has omitted and is omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and has engaged and is engaging in acts, practices, transactions and courses of business which operate or would operate as a fraud and deceit upon clients.

42. The misstatements and omissions of fact detailed in Paragraphs 1 through 39 were material.

43. The Defendant knew or was reckless in not knowing that the misrepresentations set forth in Paragraphs 1 through 39 were false and misleading.

44. By reason of the activities described herein, the Defendant has violated, is violating, and unless enjoined will again violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5], thereunder.

## SECOND CLAIM FOR RELIEF
### Violations of Sections 206(1) and 206(2) of the Advisers Act

45. The Commission re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 44.

46. At all relevant times, Weitzman acted as investment adviser, as defined by Section 202(a)(11) of the Advisers Act [15 U.S.C. § 80b-2(a)(11)], to AFW clients.

47. From at least 2005 through the present, Weitzman, as an investment adviser, directly and indirectly, by the use of the means and instrumentalities of interstate commerce or of the mails, has employed and is employing devices, schemes and artifices to defraud clients, and has engaged and is engaging in transactions, practices and courses of business which operated as a fraud and deceit upon these clients.

48. Weitzman knew or was reckless in not knowing that the representations set forth herein were false and misleading.

49. By reason of the activities described herein, the Defendant has violated and is violating, and unless enjoined will again violate, Sections 206(1) and 206(2) of the Advisers Act

[15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

### THIRD CLAIM FOR RELIEF
### Aiding and Abetting Violations of Section 204
### of the Advisers Act and Rules 204-2(a)(3) and 204-2(a)(7)

50. The Commission re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 49.

51. AFW violated Section 204 of the Advisers Act and Rules 204-2(a)(3) and (7) thereunder, by failing to make and keep true, accurate and current such books and records relating to its investment advisory business as the Commission by rule, may prescribe as necessary or appropriate in the public interest or for the protection of investors, including order memoranda for the purchase or sale of any security on behalf of a client, and written communications with clients.

52. From at least 2005 through the present, Weitzman, directly and indirectly, aided and abetted AFW's violations of Section 204 of the Advisers Act and Rules 204-2(a)(3) and 204-2(a)(7) thereunder. Specifically, Weitzman knowingly provided substantial assistance to AFW in failing to maintain truthful books and records as alleged herein.

53. By reason of the activities described herein, Defendant aided and abetted, and is aiding and abetting, AFW's violations of Section 204 of the Advisers Act [15 U.S.C. § 80b-4] and Rules 204-2(a)(3) and 204-2(a)(7) [17 C.F.R. §§ 275.204-2(a)(3) and 275.204-2(a)(7)], promulgated thereunder.

### PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court enter a judgment:

**I.**

Permanently restraining and enjoining the Defendant and Defendant's agents, servants, employees and attorneys and all persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 206(1), 206(2) and 204 of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2) and 80b-4] and Rules 204-2(a)(3) and 204-2(a)(7) thereunder [17 C.F.R. §§ 275.204-2(a)(3) and 275.204-2(a)(7)].

**II.**

Directing the Defendant, and each of his financial and brokerage institutions, officers, agents, servants, employees, attorneys-in-fact, and those persons in active concert or participation with them who receive actual notice of the judgment by personal service, facsimile service or otherwise, and each of them, to hold and retain within their control, and otherwise prevent any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment, or other disposal of any assets, funds or other property (including money, real or personal property, securities, commodities, choses in action or other property of any kind whatsoever) of, held by, or under the control of the Defendant, whether held in his name or for his direct or indirect beneficial interest wherever situated.

**III.**

Restraining and enjoining Defendant, and Defendant's agents, servants, employees, attorneys-in-fact, those persons in active concert or participation with him, and any other persons or entities, including, but not limited to, persons or entities who hold a security interest in the

property identified below, who receive actual notice of the judgment by personal service, facsimile service or otherwise, and each of them, from taking any action to transfer, pledge, seize, sell, foreclose, encumber, assign, dissipate, conceal or otherwise taking any action whatsoever that would impact or impair the value of the residence located at 16 Wrights Mill Road, Armonk, NY 10504, without providing notice to and obtaining the written consent of the Commission.

## IV.

Directing the Defendant to file with this Court and serve upon the Commission, within ten (10) business days, or within such extension of time as the Commission agrees to, a verified written accounting signed by the Defendant under penalty of perjury, of:

(1) All assets, liabilities and property currently held directly or indirectly by or for the benefit of the Defendant, including, but not limited to, bank accounts, brokerage accounts, investments, business interests, insurance policies, loans, lines of credit, and real and personal property wherever situated, describing each asset and liability, its current location and amount;

(2) All money, property, assets, and other income received by the Defendant, or for his direct or indirect benefit, at any time from January 1, 2002 through the date of the accounting, describing the source, amount, disposition and current location of each of the items listed;

(3) The names and last known addresses of all bailees, debtors, and other persons and entities that currently are holding the assets, funds or property of the Defendant; and

 (4) All assets, funds, securities, and real or personal property received by the Defendant, or any other person controlled by him, from persons who provided money to the Defendant in connection with their investments with AFW from January 1, 2002 to the date of the accounting, and the disposition of such assets, funds, securities, real or personal property.

### V.

Restraining and enjoining the Defendant, and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who received actual notice of the judgment by personal service, facsimile service or otherwise, from destroying, altering, concealing, or otherwise interfering with the access of the Commission to any and all documents, books, and records that are in the possession, custody or control of the Defendant, his agents, employees, servants, accountants, financial or brokerage institutions, or attorneys-in-fact, that refer, reflect or relate to the allegations set forth in this Complaint, including, without limitation, documents, books and records referring, reflecting or relating to the Defendant's finances or business operations, or the misappropriation of client assets and the use of proceeds therefrom.

### VI.

Restraining and enjoining the Defendant, and any person or entity acting at his direction or on his behalf, and each of Defendant's agents, employees, attorneys, or other professionals, and anyone acting in concert with them who receive actual notices of the judgment by personal service or otherwise, from filing for bankruptcy protection for the Defendant and his assets without three (3) business days notice to the Commission and approval by this Court.

## VII.

Ordering the Defendant to disgorge his ill-gotten gains, plus prejudgment interest.

## VIII.

Ordering the Defendant to pay civil money penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)].

## IX.

Granting such other and further relief as this Court deems just and proper.

Dated: New York, New York
June 10, 2009

By: _____
David Rosenfeld
Associate Regional Director
New York Regional Office
Attorney for Plaintiff
Securities and Exchange Commission
3 World Financial Center, Suite 400
New York, New York 10281-1022
Telephone: (212) 336-0153
Email: rosenfeldd@sec.gov

Of Counsel
Ken C. Joseph
David Stoelting
Jennifer C. Loach
Mona S. Akhtar